[S. F. No. 450.　Department One.—December 18, 1896.]

## C. A. WARREN, RESPONDENT, *v.* B. G. CHANDOS ET AL., APPELLANTS.

STREET ASSESSMENT — IMPROVEMENT NOT SPECIFIED IN RESOLUTION OR CONTRACT — CHANGE OF GRADE BY SUPERVISORS — COST OF FILLING LESSENED—POWER OF SUPERVISORS.—The supervisors have no power to authorize a change in the amount of assessment constituting a lien, by increasing or diminishing the work to be. done by a contractor for a street improvement, and where they lowered the grade of a street after the letting of a contract under a resolution of intention to fill it to a higher grade, the improvement to fill it to the lower grade not being specified in the resolution of intention, nor in the contract, the supervisors had no jurisdiction to order such improvement, and there was no contract therefor, and no basis for a valid assessment for such improvement.

ID.—PROCEEDINGS IN INVITUM — EQUITY—STATUTORY POWER—VALIDITY OF ASSESSMENT.— Proceedings for the improvement of streets are *in invitum,* and purely statutory, and afford no opportunity for invoking any of the principles of equity, and the validity of the assessment therefor depends upon the exercise of a statutory power, and the party seeking the right to enforce it must show that the statutory power has been strictly pursued.

ID.—APPEAL TO SUPERVISORS UNNECESSARY.—Where an assessment is rendered invalid by a change in the official grade of a street after the letting of a contract to the official line, the lotowners need not appeal to the board of supervisors for a correction of the assessment, and there is no error in such case which could be corrected on appeal.

ID.—GENERAL POWER OF SUPERVISORS—EFFECT OF CHANGE OF GRADE — ANNULMENT OF CONTRACT.— The supervisors, having general power over all improvements of streets, and to fix and change the official grade or width thereof, and to rescind a previous order for the improvement of a street, the effect of an order changing the line of the official grade of a street, after a contract has been let for the grading thereof, under a prior resolution of intention, is to take away jurisdiction to make the improvement previously authorized, and the contract for doing the work thereby ceases to be operative, and the contractor, whatever remedy he may have for being prevented from carrying out his contract, cannot proceed with its performance, and make the expense a charge on adjacent lands.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.　A. A. SANDERSON, Judge.

*Naphtaly, Freidenrich & Ackerman,* for Appellants.

Before the contractor can acquire any rights under his contract, the common council must have acquired

jurisdiction to let the contract, and the superintendent must have acquired the power to enter into the contract. (*Dougherty* v. *Hitchcock*, 35 Cal. 512; *Hewes* v. *Reis*, 40 Cal. 255; *Chambers* v. *Satterlee*, 40 Cal. 526; *Brock* v. *Luning*, 89 Cal. 316; *Dehail* v. *Morford*, 95 Cal. 460; *Perine* v. *Forbush*, 97 Cal. 305.) The board has whatever power the statute confers, and no other, and that power must be exercised in the mode prescribed. (*Nicholson Pav. Co.* v. *Painter*, 35 Cal. 705.) The resolution of intention must describe the work to be done. (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 346; *Brady* v. *King*, 53 Cal. 44.) The board has no jurisdiction to order a street to be graded to a line different from the official line. (*Emery* v. *San Francisco Gas Co.*, *supra.*) A change of the grade renders the contract void. (*Argentine* v. *Simmons*, 53 Kan. 491; *Nicholson Pav. Co.* v. *Painter*, 35 Cal. 705.)

*J. C. Bates*, for Respondent.

After the contract was entered into and work commenced, the board of supervisors could not repeal or annul the proceedings to deprive the contractor of vested rights. (*Alpers* v. *San Francisco*, 12 Saw. 631; 1 Dillon on Municipal Corporations, secs. 290, 314.) All the proceedings being regular under the law, and the assessment regular on its face, the judgment should be affirmed. (*Warren* v. *Riddell*, 106 Cal. 352; *Buckman* v. *Landers*, 111 Cal. 347.)

HARRISON, J.—Action upon a street assessment.

A contract for grading Kansas street, in San Francisco, for several blocks to the official line and grade, was awarded to plaintiff's assignor, at the rate of thirty-one cents per cubic yard, and was entered into between him and the superintendent of streets September 22, 1891. After he had commenced work under the contract, viz., June 15, 1892, an order was passed by the board of supervisors changing the grade of that portion of Kansas street embraced in the contract, by which the

same was lowered several feet. The grading to be done under this contract was a fill, so that, by the change of grade, the cost of doing the work and the assessment therefor were lessened. No further order or proceeding was had by the board of supervisors in reference to said grading, and the work therefor was completed by the contractor and his assignee to the official grade, as established by the order of June 15, 1892; and thereafter, June 16, 1893, the superintendent of streets made an assessment therefor, upon which the present action was brought. The plaintiff had judgment, and the defendants have appealed.

An underlying principle of the street improvement act is that the owners of the lands which are to be assessed for the expense of the improvement shall be informed in reference thereto before any order for the improvement can be made, and that they may themselves do the work that may be ordered. By section 3 of the act, they have an absolute veto for six months upon the work proposed by the city council, and section 5 provides that, after the contract has been awarded to the lowest bidder, the owners of three-fourths of the frontage may elect to take the work, and enter into a contract to do it, at the price at which it has been awarded, and thus incur only the actual expense of the work. This necessarily presumes that they can know after the award, and before the contract is entered into with the successful bidder, the amount of work which is to be done, and have an opportunity to estimate its cost, in order to determine whether they will elect to do the work at the price at which it is awarded.

In *Bolton* v. *Gilleran*, 105 Cal. 244, 45 Am. St. Rep. 33, it was said: "The statute gives to the owners of the land to be assessed the right to take the contract at the price at which it was awarded to the successful bidder. This implies that the owners shall be definitely informed of the work which is to be done, and of the amount for which the assessment is to be made, in order that they may intelligently consider whether it will be to their

advantage to take the contract." The rights of the owners in this respect are carefully protected in the statute. Before the improvement can be ordered, a resolution of intention "describing the work" must be adopted by the city council, and must then be posted and published before jurisdiction to order it is acquired. Before the contract can be awarded, notice, " with specifications" inviting proposals for doing the work ordered, must also be posted and published, and the contract therefor is to be awarded to the lowest responsible bidder. The privilege is then given to the owners to do the work themselves at the price at which it was awarded, and thus be relieved from all burden except its actual cost. But if, after the contract has been awarded and entered into with the successful bidder, the character of the improvement can be changed, or the amount of work necessary for its completion increased or diminished, they are not only deprived of the benefit of a competition between bidders before the award, but they are also deprived of an opportunity to determine whether it would be to their advantage to enter into the contract themselves. In the present case it appears that the amount of work required for grading the street to the official line, which was fixed after the contract was awarded, was thereby reduced to such an extent as to materially affect the cost of the improvement. Whether the amount of the assessment was thereby increased or diminished is immaterial. The grading was awarded at a price per cubic yard, and the assessment was necessarily smaller by reason of the change of grade; but, if proposals had been asked for grading the street to the line as changed, the contract might have resulted in a still smaller assessment. The price per cubic yard for filling the street would depend greatly upon the distance from which the material was brought, and the facility with which it could be obtained; and the cost per cubic yard might have been less for the diminished quantity required under the change of grade than when the original proposals were made, and it may be that the

contract for that reason has yielded a greater profit, and resulted in a larger assessment, than would have been made if the work had originally been limited to that grade. The power of the supervisors to change the amount of work to be done under the contract after it had been entered into, and have an assessment based upon the contract so changed constitute a lien upon the lands fronting upon the work, cannot depend upon whether the cost of the work is increased or diminished. Proceedings for the improvement of streets are *in invitum,* and purely statutory, and afford no opportunity for invoking any of the principles of equity. The validity of the assessment depends upon the exercise of a statutory power, and the party seeking the right to enforce it must show that the power has been strictly pursued. In *Bolton* v. *Gilleran, supra,* it was held that a contract which gave to the superintendent of streets the power to increase or diminish the cost of the improvement, after the contract had been entered into, by requiring a greater or less amount of material for its completion as he should determine, rendered the assessment invalid. The same result must follow a change by the board of supervisors of the amount of work to be done under the contract, and will render an assessment therefor invalid. It would not be contended that, after the contract had been entered into, the supervisors would have the power to directly agree with the contractor that his contract should be satisfied by a performance of only a portion of the work required, or with a different material from that named in the contract; and what cannot be done directly cannot be effected by the indirect method of changing the line to which the street shall be graded. When the contract was entered into it provided, in substance, that Kansas street should be filled in to a line ten feet above base, but the effect of the ordinance changing the official grade of the street was that the contract should be satisfied by filling it in to a line only five feet above base. It is sufficient to say that the board never acquired jurisdiction to order

this improvement of the street, for the reason that such improvement was never described in the resolution of intention, nor was a contract for this improvement ever entered into.

It was not necessary for the defendants to appeal to the board of supervisors for a correction of the assessment. The board of supervisors had no authority, in the first instance, to order the street graded to any other line than the official line, and, after that line had been changed, had no authority to require the contractor to grade the street to any other line than to the line of the official grade, as thus changed, and there was no "error" which could have been corrected on appeal. (*Dougherty* v. *Hitchcock*, 35 Cal. 512; *Brock* v. *Luning*, 89 Cal. 316; *Manning* v. *Den*, 90 Cal. 610.) By changing the line of the official grade the jurisdiction to make the improvement which had been acquired under the original resolution of intention, or to proceed therewith, was lost, and the contract for doing the work ceased to be operative. The board of supervisors and the superintendent of streets are each only an agent of the municipality with limited and defined powers, and the power conferred upon the municipality to improve its streets at the expense of the adjacent owners, although exercised through these agents, is, in effect, exercised by the municipality itself. The superintendent of streets is the ministerial officer to enter into the contract with the person to whom it is awarded, but the contract is entered into by him on behalf of the city, and the bond for its performance is to be executed to the city. The board of supervisors is the legislative body of the city, and is vested with a supervisory power over all improvements of streets and contracts therefor; and, in the exercise of its legislative discretion and consideration for the public welfare, it may, at any time, rescind a previous order for the improvement of a street, or order the street to be vacated, or its grade or width to be changed. The fact that a contract for the improvement of the street had been entered into would not deprive it of this power.

The contractor might have a right of action against the city for whatever damage he should sustain from being in this way prevented from carrying out his contract, as in the case of any other breach of contract, but, after the contract had been thereby made of no effect, he would not have the right to proceed with its performance and make the expense a charge upon the adjacent lands.

*Warren* v. *Riddell*, 106 Cal. 352, is inapplicable. In that case the line of the official grade had not been changed, or the terms of the contract varied, and, as the work was not completed to the line fixed in the contract, the board of supervisors could have directed its completion if an appeal had been taken.

The judgment is reversed and the superior court is directed to enter judgment upon the findings in favor of the defendants.

HENSHAW, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.