[S. F. No. 16848.   In Bank.   Apr. 7, 1943.]

EDWARD C. WASHER, Appellant, v. BANK OF AMER-
ICA NATIONAL TRUST AND SAVINGS ASSOCIA-
TION (a National Banking Association) et al., Re-
spondents.

824

William H. Mackay for Appellant.

Louis Ferrari, G. D. Schilling and Kenneth M. Johnson for Respondents.

EDMONDS, J.—The appellant, as an employee of Bank of America National Trust and Savings Association, had a stormy career which ended with a discharge. The National Labor Relations Board ordered the bank to reinstate him upon the ground that his services had been terminated because of his activities in connection with the organization of the United Office and Professional Workers of America, a labor union affiliated with the C. I. O. The present action is for damages claimed to have been sustained by Washer when, following the decision of the board, A. Fenton, as an officer of the bank, made a statement concerning him. The superior court, in ruling upon the sufficiency of the complaint, sustained the general and special demurrers interposed by the respondents, and the plaintiff has appealed from the judgment entered following that order.

In the first count of the complaint, Washer asserts that the respondent Fenton, acting in the scope of his duties as vice-president and personnel director of the bank, in com-

menting upon the decision of the National Labor Relations Board, orally made the following statement: "We cannot see how this institution could possibly reinstate anybody who had admitted he had falsified his expense account, who has been guilty of flagrant insubordination." Fenton made this statement to newspaper reporters and "other persons" with the intention that they should understand that it was spoken of and concerning the appellant, and it was so understood by them.

The statement was given to the reporters, the complaint continues, solely for the purpose of publication in San Francisco and elsewhere, and upon information and belief he alleges that it was published in the San Francisco Chronicle and in newspapers throughout the country. In addition, it is alleged, Fenton intended by this statement to convey to his listeners, and all who should read the statement, the idea that the appellant is a dishonest, unsatisfactory, inefficient and insubordinate worker in his profession and trade as a bank employee, and as a lawyer, and that he is guilty of the crime of embezzlement, was dishonest, and had misappropriated and failed to account properly for funds entrusted to him. Such ideas are reasonable conclusions to be drawn from the words, and, appellant is informed and believes, were conveyed to the listeners and readers as intended by Fenton. The statement was made by Fenton with malice, for the purpose of injuring, disgracing and defaming the appellant, and interfering with his ability to obtain employment. Furthermore, it was false and was known by Fenton to be false at the time it was made, and he did not have probable cause, or any cause, for believing it to be true.

Other allegations in count one are that immediately prior to the making of the statement by Fenton, the appellant had an excellent reputation in the banking business as a man of integrity, honesty and efficiency as a bank employee and as an attorney. But solely as the result of this statement, the appellant was refused employment at various banks in the state, and, he alleges, he will be unable to secure employment at his trade or profession in any bank in the state or in the United States. General, special, and exemplary damages are asked.

The second cause of action is in substantially the same form, differing only in alleging that Fenton handed to the press in writing his comment upon the board's decision.

The respondents demurred generally to the complaint upon the ground that neither count states facts sufficient to state a cause of action against them. In addition, they asserted that the pleading is uncertain, unintelligible, and ambiguous in many particulars which were specifically enumerated.

In appealing from the judgment, the appellant maintains that his complaint sufficiently states two causes of action, one for slander and the other for libel. The respondents take issue with this contention. The complaint, they say, taken as a whole, shows the truth of the alleged defamatory language to the extent necessary for a complete defense, both as to the charge of insubordination, and the charge of falsification of an expense account. To support this assertion, they rely upon the statement of facts in the copy of the decision of the National Labor Relations Board which the appellant attached as an exhibit to his complaint. But assuming that the statement of Fenton is false, say the respondents, it comes within the conditional privilege of section 47 of the Civil Code, and consequently is not actionable in the absence of malice, which the appellant has not properly pleaded.

The respondents also maintain that, as parties to a judicial or quasi-judicial proceeding, the statement made by Fenton is one which carries an absolute privilege, thus rendering falsity and malice immaterial. And the trial court did not abuse its discretion in denying further leave to amend in view of its leniency to the appellant in giving him three opportunities to state a cause of action.

In reply to these contentions, the appellant challenges the respondents' claim that the statement of facts contained in the copy of the decision of the National Labor Relations Board may be used to establish the truth or falsity of Fenton's statement. The respondents' position, he asserts, is based upon a misconception of the function of the exhibit and a distortion of its contents. For the pleader's own language in the body of the complaint must be consulted to determine for what purpose and to what extent the exhibit is adopted, and in the present pleading, the only purpose of the exhibit is to identify the appellant as the one concerning whom the statement was made.

Answering the other arguments of the respondents, the appellant takes issue with their assertion that the statement concerning him was a privileged one. Conceding, however, that they are entitled to a defense of a conditional privilege within the meaning of section 47 of the Civil Code, he claims

he has sufficiently pleaded the existence of malice to remove the protection of privilege from the communication. And since a cause of action good as against a general demurrer is stated, the trial court abused its discretion in sustaining the demurrers without leave to amend, even though some of the grounds of special demurrer may have been well taken.

"Libel is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, sec. 45.) "Slander is a false and unprivileged publication other than libel, which: 1. Charges any person with crime. . . . 3. Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits. . . ." (Civ. Code, sec. 46.) These definitions have been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation (*Bates* v. *Campbell*, 213 Cal. 438, 441 [2 P.2d 383]; *Stevens* v. *Snow*, 191 Cal. 58, 62 [214 P. 968]; *Schomberg* v. *Walker*, 132 Cal. 224, 227 [64 P. 290]; *Tonini* v. *Cevasco*, 114 Cal. 266, 272 [46 P. 103]); and words clearly conveying a meaning within one of the statutory categories are actionable *per se*.

The appellant has pleaded that Fenton's statement concerning him comes within two of these classifications in that (1) as a whole, it tended to injure him in his occupation; and (2) that it charged him with a crime. By way of innuendo, he has alleged the defamatory character of the language as follows: "Fenton, when he made said statement, intended to convey to his listeners and all who should read the statement the idea that plaintiff was a dishonest, unsatisfactory, inefficient and insubordinate worker in his profession and trade as a bank employee, and as a lawyer, and to further convey the impression that he was guilty of the crime of embezzlement, and was dishonest, and had misappropriated and failed to properly account for funds entrusted to him. Plaintiff is informed and believes that said ideas actually were conveyed to said listeners and readers by said statement as intended by Fenton, and such ideas were reasonable conclusions to be drawn from said words."

■ The office of an innuendo is to declare what the words meant to those to whom they were published. When the words themselves, under any circumstances, would convey to those who read or hear them a meaning within the statutory definitions, there is no occasion for the pleading of an innuendo. Conversely, if the words under no circumstances could convey a defamatory meaning, then no innuendo can make them defamatory. An innuendo, however, is necessary where the words used are susceptible of either a defamatory or an innocent interpretation. (*Bates* v. *Campbell, supra,* p. 442; and see Hall, *Pleading in Libel Actions,* 12 So. Cal.L.Rev. 224, 229-231. ■ And when the offending language is susceptible of an innocent interpretation, it is not actionable *per se,* but, in addition to an innuendo, it is necessary for the plaintiff to allege special damages by reason of the meaning gained from the publication. (*Peabody* v. *Barham,* 52 Cal.App.2d 581, 584, 585 [126 P.2d 668].)

■ The word "falsify" has been described as a word of double import in that it may be used to convey two distinct meanings—either that of being intentionally or knowingly untrue, made with intent to defraud, or mistakenly and accidentally untrue (*Fouts* v. *State,* 113 Ohio St. 450, 462 [149 N.E. 551]; *North American Acc. Ins. Co.* v. *Tebbs,* 107 F.2d 853, 855, 856). A third meaning has also been suggested, namely, not an accidental but an intentional untruth, without, however, an intent to defraud. (*People* v. *Tomalty,* 14 Cal.App. 224, 229, 230 [111 P. 513].)

Because of these differing definitions, to state a cause of action for the use of the word "falsify" as one charging him with a crime, it was necessary for the appellant to plead that meaning by innuendo. ■ But, unquestionably, Fenton's statement justifying the bank's action in discharging the appellant upon the grounds that he had admitted falsifying an expense account and had been guilty of flagrant insubordination, would, by its natural and probable effect upon the hearer or reader, tend to injure the appellant in his occupation (*Bates* v. *Campbell, supra,* p. 442; and see cases collected in note, 66 A.L.R. 1499), even if the word "falsified" was not understood as implying a criminal act. Fenton's statement was therefore libelous and slanderous *per se* insofar as it related to his qualifications as an employee.

■ Ordinarily an innuendo may be stricken as surplusage when the words themselves convey a meaning within one of the actionable categories. (*Bates* v. *Campbell, supra,* at p. 443;

Hall, *Pleading in Libel Actions, supra,* at p. 230, n. 17.) But it was proper for the appellant to plead one to the charge that they tended to injure him in his occupation as well as to assert that they charged him with the commission of the crime of embezzlement, in order to avoid the consequence of the rule that a pleader is bound by the meaning placed upon the language by innuendo. (See cases collected in 16 Cal.Jur., Libel and Slander, sec. 57, p. 89, n. 1.) Thus, had the appellant pleaded only the innuendo in regard to embezzlement, the trial court might have concluded that he intended only to rely upon that particular interpretation of the statement as the basis for recovery.

Contrary to the respondents' assertion, the fact that the appellant is not named in the defamatory statement does not preclude words clearly conveying a meaning within one of the statutory classifications of libel and slander from being actionable *per se.* (*Williams* v. *Seiglitz,* 186 Cal. 767, 771 [200 P. 635]; *Harris* v. *Zanone,* 93 Cal. 59, 65-67 [28 P. 845]; *Semple* v. *Andrews,* 27 Cal.App.2d 228, 233, 234 [81 P.2d 203]; *Dewing* v. *Blodgett,* 124 Cal.App. 100, 103, 104 [11 P.2d 1105].) It was merely necessary for the appellant to plead, as he did, that the words were spoken of and concerning him. (Code Civ. Proc., sec. 460; *Williams* v. *Seiglitz, supra; Harris* v. *Zanone, supra; Semple* v. *Andrews, supra; Dewing* v. *Blodgett, supra.*) Consequently, insofar as Fenton's statement tended to injure the appellant in his occupation, it was unnecessary for him to allege special damage. But the words charging him with falsification, if understood as relating to a crime, present a different situation. As they are not actionable *per se,* the appellant was required specially to plead the nature of his damage, and his specifications concerning the loss of employment and prospective disadvantage in the banking business are sufficient as against a general demurrer.

The respondents' principal criticism of Washer's complaint is that it shows the truth of Fenton's statement. They rely upon the statement of facts contained in the decision of the National Labor Relations Board as showing insubordination justifying discharge and also the falsification of Washer's expense account.

The general rule is that when a written instrument which is the foundation of a cause of action or defense is attached to a pleading as an exhibit and incorporated into it by proper

reference, the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage. (*Gosewisch* v. *Doran*, 161 Cal. 511 [119 P. 656, Ann.Cas. 1914 D, 442]; *Alphonzo E. Bell Corp.* v. *Bell View Oil Syndicate*, 46 Cal.App.2d 684 [116 P.2d 786]; *National Pavements Corp.* v. *Hutchinson Co.*, 132 Cal.App. 235 [22 P.2d 534]; *Bashford* v. *A. Levy & J. Zentner Co.*, 123 Cal. App. 204 [11 P.2d 51]; *Simmons* v. *Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813.) But an instrument which is not the basis of a cause of action or defense falls in a different category; the pleading of such a document as an exhibit is only an assertion of its existence and character (*Holly Sugar Corp.* v. *Johnson*, 18 Cal.2d 218, 226 [115 P.2d 8]; *People* v. *Reid*, 195 Cal. 249, 260, 261 [232 P. 457, 36 A.L.R. 1435]; *Lambert* v. *Haskell*, 80 Cal. 611 [22 P. 327]; *Los Angeles* v. *Signoret*, 50 Cal. 298; *San Francisco Sulphur Co.* v. *Aetna Indem. Co.*, 11 Cal.App. 695 [106 P. 111]), in the absence of allegations indicating the pleader's intention to adopt as his own the recitals of the exhibit (*Holly Sugar Corp.* v. *Johnson, supra; People* v. *Reid, supra; Silvers* v. *Grossman*, 183 Cal. 696, 700 [192 P. 534]). Consequently, unless the action or defense is founded upon the exhibit, the language of the complaint or answer determines the extent to which the document has been made a part of the pleading.

In each count of the appellant's complaint, after quoting the allegedly defamatory statement of Fenton, Washer says that it was made by him in commenting "upon a decision of the National Labor Relations Board in the case of 'In the Matter of the Bank of America National Trust and Savings Association California and United Office and Professional Workers of America, Case No. C-903' (14 NLRB, No. 15) by which decision the Board ordered the Bank to reinstate plaintiff to employment with the said Bank; a copy of said decision is attached hereto as Exhibit 'A' and made a part hereof." The parties concede that the order of the National Labor Relations Board is not res judicata in the present action, and there is nothing in the appellant's complaint which indicates that he intended to include as a part of his pleading any statement of facts made by the board in deciding the matter before it. Under these circumstances, the recitals of the board's decision may be considered only insofar as they show that there was a determination which concerned the appellant and that Fenton's comment was made in reference to the requirement as to reinstatement.

But even though Fenton's statement was false, the respondents assert, his statement was conditionally privileged and therefore is not actionable because of the failure properly to plead the existence of malice. As the appellant has expressly conceded that the occasion for Fenton's comment was one according a conditional privilege, the scope of the inquiry upon this question is limited to a consideration of the allegations of malice (Civ. Code, sec. 48), which are as follows: "Said statement was made by Fenton with malice, for the purpose of injuring, disgracing and defaming plaintiff, and interfering with his ability to obtain employment. It was false and known by Fenton to be false at the time it was made and Fenton did not have probable cause or any cause for believing it to be true."

In contending that these allegations are incomplete, the respondents rely upon *Locke* v. *Mitchell*, 7 Cal.2d 599 [61 P.2d 922]. In that case, the defamatory words were alleged to be "false, malicious and scandalous and did and do expose plaintiff to hatred, contempt and ridicule, and have injured and do injure plaintiff in the practice of his profession." In commenting upon the pleading, the court said, "The pleading does not allege that the defendants knew the charges were false or had any reason to believe they were false. The pleading, of course, does use the words, 'malicious' and 'maliciously,' but these words, standing alone, are not sufficient to charge malice in fact."

The pleading in the present action apparently was drafted to avoid the vice of the complaint in the Locke case, for the appellant has alleged, not only that the statement is false, but also that it was known by Fenton to be false at the time he made it and, furthermore, that he did not have probable or any cause for believing it to be true. In addition he has alleged that the statement was made for the purpose of injuring, disgracing and defaming him and interfering with his ability to obtain employment. Such allegations constitute a clear and definite pleading of malice in fact. (*Morcom* v. *San Francisco Shopping News*, 4 Cal.App.2d 284, 290 [40 P.2d 940].)

The respondents, however, claim that they have a complete defense under section 47, subdivision 2, of the Civil Code, which declares that a publication is privileged when made "In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law. . . ."

A publication so made is absolutely privileged, that is, not actionable although given maliciously and with knowledge of its falsity. (*Donnell* v. *Linforth*, 11 Cal.App.2d 25 [52 P.2d 937]; and see *Layne* v. *Kirby*, 208 Cal. 694, 696, 697 [284 P. 441]; *Stevens* v. *Snow*, 191 Cal. 58, 64, 65 [214 P. 968]; *Hale Co.* v. *Lea*, 191 Cal. 202, 205 [215 P. 900]; *Moore* v. *United States F. & G. Co.*, 122 Cal.App. 205 [9 P.2d 562].) And the Restatement of Torts, referring particularly to the parties to such a proceeding, states the same rule, say the respondents, as follows: "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto." (Vol. 3, sec. 587.)

The extension of this absolute privilege to statements not made in the judicial or legislative proceeding itself is, however, limited both by the rule of the Restatement and the decisions to communications such as those made by a client to his attorney or by an individual to a prosecuting attorney or other public officer preliminary to a proposed criminal proceeding. (Rest. Torts, sec. 587, comment b.) None of the authorities cited by the respondents extends the privilege beyond a communication to one actually involved in the proceeding, either as a judge, attorney, party, or witness.

It is the position of the respondents that a party to a labor dispute before the National Labor Relations Board, and while such a proceeding is pending (a fact which nowhere appears in the complaint), is clothed with an absolute privilege to discuss such matters, and that language pertinent thereto will not be actionable even though false and made with malice. They rely upon *Thornhill* v. *Alabama*, 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093], and *Carlson* v. *California*, 310 U.S. 106 [60 S.Ct. 746, 84 L.Ed. 1104], as holding that the publicizing of the facts of a labor dispute in a peaceful manner is within the liberty of free discussion guaranteed by the Fourteenth Amendment to the United States Constitution. However, they fail to recognize the distinction between the authority of a court to enjoin discussion relating to employment or working conditions and the responsibility of the speaker civilly for any injury caused by a malicious and false statement made in the course of such a controversy. For although either an employer or an employee may be immune from liability when he,

without malice, publishes the facts of a dispute between them, a statement made maliciously and with knowledge of its falsity does not have that protection.

As the complaint states a cause of action, the denial of leave to amend was an abuse of discretion, even if the special demurrers were well taken. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 819, 719 [128 P.2d 522, 141 A.L.R. 1358].) And since the action was commenced subsequent to the effective date of section 472c of the Code of Civil Procedure, a special request by the appellant for leave to amend was unnecessary. (*Wennerholm* v. *Stanford Univ. Sch. of Med., supra,* p. 719.) However, upon a reconsideration of the special demurrers, the trial court may require the clarification of any uncertainties or ambiguities. (*Wennerholm* v. *Stanford Univ. Sch. of Med., supra,* p. 720; *Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97, 104 [114 P.2d 1].)

The judgment is reversed.

Gibson, C. J., Curtis, J., Traynor, J., and Griffin, J. pro tem., concurred.

Respondents' petition for a rehearing was denied May 6, 1943. Curtis, J., Carter, J., and Schauer, J., voted for a rehearing.